2004 SD 3

**Rehearing of Decision of South Dakota Supreme Court in the Matter of Loren POURIER, d/b/a Muddy Creek Oil and Gas, Inc., and Muddy Creek Oil and Gas, Inc., Plaintiffs and Appellants,**

v.

**SOUTH DAKOTA DEPARTMENT OF REVENUE, Defendant and Appellee.**

No. 22221.

Supreme Court of South Dakota.

Order Granting Rehearing April 2, 2003.

Argued on Rehearing on May 29, 2003.

Reassigned June 27, 2003.

Decided Jan. 7, 2004.

Vanya S. Hogen, Collette Routel, Richard A. Duncan of Faegre & Benson L.L.P., Minneapolis, Minnesota, Attorneys for plaintiffs and appellants.

Lawrence E. Long, Attorney General, David D. Wiest, Assistant Attorney General, Pierre, South Dakota, Attorneys for defendant and appellee.

Jennifer Fyten, Flandreau, South Dakota, Attorney for Amicus Curiae, Oglala Sioux Tribe.

Terry L. Pechota, Rapid City, South Dakota, Attorney for Amicus Curiae, Rosebud Sioux Tribe.

KONENKAMP, Justice (on reassignment).

[¶ 1.] Muddy Creek Oil and Gas, Inc., operates Big Bat's Texaco on the Oglala Sioux Reservation. Loren Pourier, an enrolled member of the Oglala Sioux Tribe, is the sole owner of the company. Muddy Creek sought a refund of the South Dakota motor fuel tax it paid. In *Pourier v. South Dakota Dep't of Revenue*, 2003 SD 21, 658 N.W.2d 395 (*Pourier I*), we unanimously ruled that the taxes were illegally collected because the Hayden–Cartwright Act does not contain express congressional authorization to tax Native Americans on Indian reservations. We also decided that Muddy Creek's consumers, rather than Pourier and his company, bore the legal incidence of the tax, and therefore the consumers were entitled to most of the tax refund. Only to the extent that Pourier and Muddy Creek used gasoline as consumers would they be permitted to claim refunds. We reversed and remanded for proceedings to allow for payment to reservation Indian consumers who apply for and prove their entitlement to refunds. Lastly, in *Pourier I*, with two justices dissenting and one writing specially, two members of this Court also ruled that any "limitation periods imposed by the motor fuel taxation scheme are inapplicable in this case."

[¶ 2.] After our opinion was handed down, both Pourier and the State petitioned for rehearing, urging us to reconsider certain portions of *Pourier I*. We granted the State's petition, solely on the question of the proper limitations period for refund applications. We now hold that the limitations period applicable in this case is fifteen months under SDCL 10–47B–141 and that claims for times predating December 17, 1997 are untimely. Accordingly, we vacate Issue 4 of *Pourier I*, 2003 SD 21, ¶¶ 35–38, 658 N.W.2d at 406–07, and replace it with the following discussion on the proper limitations period. In all other respects, the decision in *Pourier I* will stand.

## Statute of Limitations

[¶ 3.] In November 1995, Muddy Creek received motor fuel and special fuel licenses from the South Dakota Department of Revenue. In the following years, it filed a succession of refund claims and objections to collection of motor fuel taxes. All claims were denied. In the administrative appeal, the hearing examiner found that no claims were timely for periods before December 17, 1997. All the earlier claims were untimely either because Muddy Creek did not appeal the final decisions of the Department of Revenue denying them or because the claims were filed late. Muddy Creek does not dispute the hearing examiner's findings on the factual timeliness of the refund claims. Instead, it contends that no statute of limitations applies or that a longer statutory limitations period applies.

[¶ 4.] In agreeing with Muddy Creek's argument, *Pourier I* did not analyze any specific statute of limitations,

since two members of the Court ruled that the "justifications [for limitations periods] are simply not present in this case." 2003 SD 21, ¶ 38, 658 N.W.2d at 407. They reasoned that "[b]ecause the State exceeded its authority in imposing this tax, the limitation periods imposed by the motor fuel taxation scheme are inapplicable in this case." *Id.* ¶ 37. On further reconsideration, however, we now conclude that the fifteen-month limitations period applies here. SDCL 10–47B–141 provides:

> Any claim for refund of motor fuel or special fuel tax shall be received by the department within fifteen months of the date the fuel was originally purchased in order to be accepted for refund. Fuel purchased more than fifteen months from the date the claim is received is forever barred from refund eligibility.

Muddy Creek cites other possible statutes, such as SDCL 15–2–13 (six years for common law actions) and SDCL 10–59–19 (three years for overpaid taxes), but those do not specifically deal with the time limit for obtaining refunds on motor fuel taxes.[1] In cases where more than one statute arguably touches upon the same subject matter, we presume that the statute with the more specific language "relating to a particular subject will prevail over the general terms of another statute." *Martinmaas v. Engelmann,* 2000 SD 85, ¶ 49, 612 N.W.2d 600, 611 (quoting *Moss v. Guttormson,* 1996 SD 76, ¶ 10, 551 N.W.2d 14, 17).

[¶ 5.] Muddy Creek cites tax deed cases like *Hough v. Perkins County,* 72 S.D. 236, 32 N.W.2d 632, 633 (1948) to argue that South Dakota's fifteen month limitations period for seeking a refund on motor fuel tax is "inoperative" and inappli-cable. These tax deed cases have nothing to do with tax refunds. They stand only for the proposition that certain defects in a tax deed are jurisdictional against which a statute of limitations is necessarily inoperative. *See also Cornelius (Lynch, Intervener) v. Ferguson,* 23 S.D. 187, 121 N.W. 91, 93 (1909). These decisions follow a long line of South Dakota cases standing for the rule that persons cannot be deprived of their real property through the sale of a tax deed if the defects in the process of obtaining the deed are so serious as to deprive owners of their property without due process of law. Here, with respect to refunds on motor fuel tax, Indian taxpayers will not be deprived of due process. They will have a right to seek a refund within a reasonable time.

[¶ 6.] Nor will the case of *Pederson v. Stanley County,* 34 S.D. 560, 149 N.W. 422 (1914) avail Muddy Creek. In *Pederson,* this Court held that the common law rule that taxes voluntarily paid cannot be recovered has no application to an instance where the tax was illegally imposed by an outside jurisdiction. Aside from the fact that no statute of limitations was at issue in *Pederson,* we now have a specific statute governing the recovery of improperly collected motor fuel taxes. *See* SDCL 10–47B–141. The Legislature is at liberty to override common law rules by statutory enactment. SDCL 1–1–24.

[¶ 7.] As for the constitutionality of our fifteen-month statute, the United States Supreme Court has definitively authorized reasonable procedural limitations, including "relatively short statutes of limitation" applicable to tax refund claims. *McKesson Corp. v. Div. of Alcoholic Beverages*

---

1. The dissent contends that newly enacted Senate Bill 225 is retroactive and imposes a six-year statute of limitations in this case. SDCL 2–14–21 provides that "No part of the code of laws enacted by § 2–16–13 shall be construed as retroactive unless such intention plainly appears." Nothing in this bill indicates, much less plainly indicates, that it is intended to be retroactive.

*and Tobacco, Dep't of Bus. Regulation of Florida,* 496 U.S. 18, 45, 110 S.Ct. 2238, 2254, 110 L.Ed.2d 17, 41 (1990). The Supreme Court acknowledged this vital issue in dealing with tax refunds, endorsing a State's "exceedingly strong interest in financial stability." *Id.* at 37, 110 S.Ct. 2238. With sixty-six percent of South Dakota's highway funding coming from motor fuel taxes, a short time to obtain refunds is imperative to maintain fiscal soundness. So long as they provide a "clear and certain remedy," indeed, "the States are afforded great flexibility in satisfying the requirements of due process in the field of taxation." *Nat'l Private Truck Council, Inc. v. Oklahoma Tax Comm'n,* 515 U.S. 582, 587, 115 S.Ct. 2351, 2354, 132 L.Ed.2d 509, 516 (1995) (citations omitted). During all times at issue here, South Dakota provided a remedy for obtaining a motor fuel tax refund to those who complied with the procedural requirements in the statutes. Muddy Creek did not comply with those requirements and thus it cannot revive its untimely claims; they are foreclosed and "forever barred from refund eligibility." SDCL 10–47B–141.

[¶ 8.] Because we have declared unconstitutional the State's collection of motor fuel tax from Muddy Creek, consumers who timely seek and prove their entitlement to a refund may recover the taxes they paid. SDCL 10–47B–131.2. We remand this matter for a hearing where Pourier and Muddy Creek can prove the amount of motor fuel tax they paid as consumers for their personal use. The brunt of these taxes were paid by Muddy Creek's consumers because the hearing examiner found that "Muddy Creek's price at the pump includes South Dakota's $.22 per gallon fuel tax." Since Muddy Creek's customers bore the legal and economic incidence of this tax, a fact the State concedes, any person who was enrolled member of the Oglala Sioux Tribe and who paid the invalidly collected motor fuel tax may timely seek a refund for the taxes paid as part of their purchases made during the same period applicable to Muddy Creek's timely claims. SDCL 10–47B–131.2 provides in relevant part that consumers "of motor fuel [ . . . ] may apply for and obtain a refund of fuel taxes imposed and paid to this state, if a state or federal court of final appeals finds that taxation of the purchase or use the fuel is preempted by federal law or unconstitutional." Thus, to the extent that Muddy Creek's claims were timely, then these tribal members, being the actual aggrieved consumers, may be deemed to have their claims considered timely.

[¶ 9.] Reversed and remanded as modified.

[¶ 10.] AMUNDSON, Retired Justice and RUSCH, Circuit Judge, concur.

[¶ 11.] GILBERTSON, Chief Justice, concurs with writing.

[¶ 12.] SABERS, Justice, dissents.

[¶ 13.] RUSCH, Circuit Judge, sitting for ZINTER, Justice, disqualified.

[¶ 14.] MEIERHENRY, Justice, not having a been a member of the Court at the time this action was submitted to the Court, did not participate.

GILBERTSON, Chief Justice (concurring).

[¶ 15.] In *Pourier v. SD Dept. of Revenue,* 2003 SD 21, 658 N.W.2d 395, I raised a concern over the application of SDCL 10–47B–131.2 and its 15–month statute of limitation, SDCL 10–47B–141, to this case. I felt their validity hinged on whether "those tribal members paid [the gas tax] under coercion and duress." 2003 SD 21, ¶ 49, 658 N.W.2d at 408.

[¶ 16.] Thereafter this Court granted a rehearing on the refund issue. In the rehearing proceeding, neither party nor the amici convincingly argued that remand was necessary to determine whether the tribal members paid the gas tax under coercion.

[¶ 17.] Therefore, the validity of SDCL 10–47B–131.2 and SDCL 10–47B–141 stands. *McKesson Corp. v. Division of Alcoholic Beverages*, 496 U.S. 18, 110 S.Ct. 2238, 110 L.Ed.2d 17 (1990). As such, I join in the opinion of the Court.

SABERS, Justice (dissenting).

[¶ 18.] Upon the grant of the Attorney General's Petition for Rehearing,[2] the issue is which statute of limitation applies, if any, to an illegally collected, unconstitutional tax.

[¶ 19.] The Attorney General argues in the alternative, that:

1) the fifteen month statute of limitation of SDCL 10–47B–141[3] applies; or

2) the three year statute of limitation of SDCL 10–59–19[4] applies; or

3) either the six year statute of limitation of SDCL 15–2–13[5] or Senate Bill 225 applies.

[¶ 20.] Pourier argues that *no* "period of statutory limitation can operate as a bar to the right to abate taxes which were illegally levied and assessed. Any tax which is illegal from the beginning cannot ripen into a legal tax by mere lapse of time." Appellant's Brief, pp. 10, 11 (citing Att'y Gen. Op. 302 (1949–50); Att'y Gen. Op. 53, 54 (1959–60); Att'y Gen. Op. 229, 231 (1971–72)). Pourier argues in the alternative that South Dakota's six year statute of limitation applies to recover illegal taxes paid under duress.

[¶ 21.] We should accept Pourier's argument in part and hold that South Dakota's six year statute of limitation applies to recover illegal and unconstitutional taxes paid under duress for the following reasons:

1) These taxes were illegally and unconstitutionally imposed.

2) SDCL 10–47B–131.2, which was enacted by the South Dakota Legislature *after* all three of the other statutes of limitations (i.e., the 15 month statute of limitation, the 3 year statute of limitation, and the 6 year statute of limitation), provides in part:

---

**2.** *Pourier v. South Dakota Dept. of Revenue*, 2003 SD 21, 658 N.W.2d 395 (*Pourier I*).

**3.** SDCL 10–47B–141 provides:

Any claim for refund of motor fuel or special fuel tax shall be received by the department within fifteen months of the date the fuel was originally purchased in order to be accepted for refund. Fuel purchased more than fifteen months from the date the claim is received is forever barred from refund eligibility.

**4.** SDCL 10–59–19 provides:

A taxpayer seeking recovery of an allegedly overpaid tax, penalty or interest shall file a claim for recovery with the secretary, within three years from the date the tax, penalty or interest was paid or within three years

from the date the return was due, whichever date is earlier. A claim for recovery not filed within three years of the date the tax was paid or within three years of the date the return was due, whichever date is earlier, is barred.

**5.** SDCL 15–2–13 provides in part:

Except where ... a different limitation is prescribed by statute, the following civil actions ... can be commenced only within six years after the cause of action shall have accrued:

(1) An action upon ... [an] obligation, or liability, express or implied,

... [.], or

(4) An action for taking, detaining, or injuring any goods or chattels, including actions for specific recovery of personal property[.]

A consumer of motor fuel or undyed special fuel may apply for and obtain a refund of fuel taxes imposed and paid to this state, *if* a state or federal court of final appeals finds that taxation of the purchase or use the fuel is *preempted by federal law* or *unconstitutional.*

(emphasis supplied). SDCL 10–47B–131.2 deals specifically with unconstitutional motor fuel taxes and supersedes the more general provisions.

3) In *McKesson,* the United States Supreme Court held:

If a State places a taxpayer under duress promptly to pay a tax when due and relegates him to a post payment refund action in which he can challenge the tax's legality, the Due Process Clause of the Fourteenth Amendment obligates the state to provide *meaningful backward looking relief* to rectify any unconstitutional deprivation.

*McKesson v. Division of Alcoholic Beverages and Tobacco,* 496 U.S. 18, 31, 110 S.Ct. 2238, 2247, 110 L.Ed.2d 17, 32 (1990) (emphasis supplied).

4) Additionally, the State argues alternatively that should neither the fifteen month nor the three year statute of limitation apply, the Court should apply the statute of limitations enacted in Senate Bill 225 shortly after this Court's decision in *Pourier.* Senate Bill 225 provides:

ENTITLED, An Act to limit the amount of time in which a recovery claim for certain paid taxes may be made and to declare an emergency.

BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF SOUTH DAKOTA:

Section 1. That chapter 10–59 be amended by adding thereto a NEW SECTION to read as follows:

Unless a different limitation is prescribed by this title, a claim for recovery of any tax, penalty, or interest shall be filed with the secretary within six years of the date the tax was due or paid, whichever date is earlier.[6]

Section 2. Whereas, this Act is necessary for the support of the state government and its existing public institutions, an emergency is hereby declared to exist, and this Act shall be in full force and effect from and after its passage and approval.

Senate Bill 225 was approved by the Governor and signed into law on March 25, 2003, to protect the State treasury from substantial tax refunds anticipated by the Attorney General to result from our holding in *Pourier I.*[7] Although the enactment

---

6. Enacted as SDCL 10–59–19.1.

7. The Attorney General's office argued at oral arguments, and in its brief that failure to impose a statute of limitation in this case would result in the State being forced to pay out refunds dating back to 1923, the year the State began imposing motor fuel taxes. However, the holding in Pourier was limited to its facts and the earliest possible claim would date only to 1995. Furthermore, this assertion by the State is inconsistent with the State's previous argument that it imposed motor fuel taxes on Native Americans in reliance on the Hayden–Cartwright Act, which was not enacted until 1936.

This assertion is also inconsistent with the Attorney General's letter to Pourier's counsel dated June 11, 1999 which indicated that Pourier's claims were governed by the three year statute of limitation in SDCL 10–59–19.

Moreover, the assertion is inconsistent with the Attorney General's concession that the refund claims made by Muddy Creek for the period of December 17, 1997 through December 31, 1999 were timely filed.

Finally, there is no evidence in the record regarding the State's collection of motor fuel taxes aside from those collected by Muddy Creek.

does not contain express words of retroactivity, it appears clear that the "emergency" was *Pourier I* and that Senate Bill 225 was intended to apply retroactively as the stopgap.

[¶ 22.] Therefore, consistent with this opinion and a 6 year statute of limitation, we should remand to the trial court with instructions to direct the Department to:

1) Determine the correct amount of the invalid tax (refund) that applies to purchases by Muddy Creek for its use on the reservation.

2) Determine, upon proper application, the correct amount of the invalid tax (refund) that applies to gas purchases from Muddy Creek by reservation Indian consumers.

3) Determine related questions, such as prejudgment interest.